UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-CR-379 (ABJ) |
| : | |
| LARRY DUNCAN, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Larry DUNCAN ("DUNCAN") be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C) and 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

*Indictment and Arrest of DUNCAN and Search of DUNCAN's Residence*

On September 10, 2025, a federal grand jury sitting in the District of Columbia returned Second Superseding Indictment adding DUNCAN to Case Number 23-CR-379, and charging him with Conspiracy to Distribute and Possess With Intent to Distribute 100 kilograms or More of Marijuana and a Detectable Amount of Oxycodone (Count One); Conspiracy to Discharge, Brandish, Use, Carry, and Possess Firearms, Including Machineguns, During, in Relation to, and in Furtherance of a Drug Trafficking Offense (Count Two); Unlawful Distribution and Possession With Intent to Distribute Marijuana (Counts Ten, Twelve, and Fifteen); Using, Carrying, and Possessing Firearms During, in Relation to, and in Furtherance of a Drug Trafficking Offense (Counts Eleven and Fifteen);

and Discharging and Brandishing a Firearm During and in Relation to a Drug Trafficking Offense (Count Thirteen).

On September 18, 2025, DUNCAN was arrested at his residence and a search warrant was executed. DUNCAN was in a bedroom with the mother of his children. Incident to his arrest, DUNCAN spontaneously admitted that he spent his nights at that house, and that the bedroom he was arrested in was his bedroom. From that same bedroom, on DUNCAN's side of the bed, FBI agents recovered a Glock, Model 19, 9mm handgun bearing serial number PPP 143, that was fitted with a Machinegun Conversion Device ("MCD"), commonly referred to as a "switch," or "giggle switch," which functions to convert the handgun to be capable of fully automatic firing. Agents also found a 30-round, high-capacity magazine, loaded with 23 rounds of 9mm ammunition.



From that same bedroom, agents recovered $72,000 in United States currency in the following denominations: $12,100, in $100 bills; $7,150 in $50 bills; $49,720 in $20 bills; $3,420 in $10 bills; $535 in $5 bills; $75 in $1 bills.



From that same bedroom, agents recovered a total of 17,322.7 grams of marijuana (38.19 pounds), contained within either heat-sealed bags or large, plastic "turkey bags," with each bag weighing approximately one pound.



### *DUNCAN's Participation in the Charged Offenses*

As reflected in the Second Superseding Indictment, DUNCAN was a "big homie" in a violent street crew that operated in the Congress Heights neighborhood of Southeast Washington, D.C. and referred to themselves as the "Push Dat Shit" or "PDS" crew. PDS maintained trap houses at the Oak Hill Apartment Complex ("Oak Hill"), located in the 3300 blocks of Wheeler Road, Southeast, and Tenth Place, Southeast. PDS also operated an open-air drug market in the parking lot shared by Holiday Liquor and Holiday Mart convenience store ("Holiday"), located at 3509 Wheeler Road, Southeast. DUNCAN, who used the Instagram vanity name "larrylove_men_of_business," advertised his allegiance with PDS, as well as his presence at both Oak Hill and Holiday.



*DUNCAN at Holiday*   *DUNCAN at Holiday*   *DUNCAN at Oak Hill*

As a "Big Homie," DUNCAN served as a leader within the gang and was one of the two primary suppliers of marijuana for sale by crew members.[1] Both DUNCAN and Willis had access to

---

[1] The other, large-scale supplier of marijuana within the crew was Andre Willis, a/k/a "Boogie," who was convicted at trial in Case Number 22-CR-303, and sentenced to serve 240 months' imprisonment.

large-scale distributors of marijuana that provided high-quality marijuana in large quantities at a comparatively low price. In addition, DUNCAN supplied PDS members with oxycodone tablets which they also sold at Holiday. That PDS members had access to virtually unlimited amounts of high-quality marijuana at a low price, as well as a dedicated place to sell that marijuana, created a sizeable market advantage and PDS' sales of marijuana provided substantial financial benefits for gang members. As with his allegiance to PDS, DUNCAN advertised his prowess at supplying marijuana and oxycodone on his Instagram page.



The success of PDS' drug sales drew the attention of rival gangs who began "spinning the block" – street code for drive-by shootings – on PDS at both Oak Hill and Holiday in an attempt to kill or injure their rivals and push them off of their spot. PDS, in turn, would "spin the block" on its rivals as retribution for shootings in their territory and as deterrence against future incursions. Here again, PDS had access to resources that their rivals lacked. Specifically, homemade, fully automatic "ghost gun" AR-Pistols that were assembled by PDS crew member Diante Wiley from kits that he bought online and modified to allow them to function as machineguns.[2] DUNCAN and his fellow "Big Homies" would give the order for PDS "youngins" to "spin the block" on rival crews, and would outfit them with firearms and sometimes cars for that purpose. As with his allegiance to PDS, DUNCAN advertised his participation in the PDS gang wars on his Instagram page.



PDS' participation in street wars, or "beefs," with rival crews required a constant influx of new firearms. In addition to the AR-Pistol machineguns mentioned above, PDS members would

---

[2] The United States' evidence at trial will prove that DUNCAN actively supported the manufacture and sale of AR-Pistol machineguns into the crew and purchased multiple machineguns from Wiley.

purchase or attempt to purchase handguns and other firearms from contacts in the community. DUNCAN was among the PDS members who frequently purchased firearms for communal use by PDS members. Below is but one of dozens of conversations wherein DUNCAN solicits a contact for firearms and states his desire to purchase a firearm from that person. This conversation was collected from DUNCAN's cellular telephone pursuant to a search warrant, and his portion of the conversation is in green.



In addition to purchasing firearms for communal use, DUNCAN was able to attach MCDs to Glock-style handguns. As noted above, MCDs convert the Glock-style handgun to function as a fully automatic machinegun. One such conversation in which DUNCAN offers his services is below. This conversation was collected from DUNCAN's cellular telephone pursuant to a search warrant, and his portion of the conversation is in green.



*DUNCAN's "High Rise" Trap House*

Due to the steady increase of shootings at Oak Hill and Holiday, DUNCAN eventually secured an apartment in the Overlook at Oxon Run Apartment complex, which is located at 3700 9th Street, Southeast, approximately one-half mile south of Oak Hill.



DUNCAN rented apartment 1018, which he and other PDS members began referring to as the "High Rise."

DUNCAN kept the High Rise for himself – operating it as a "trap house" where drugs and guns were stored and sold – and lived there until he moved to Maryland with the mother of his children. After DUNCAN moved, he let Markquette COWAN and Christopher BROADY live at the High Rise. Even after he moved out, DUNCAN was the exclusive supplier of marijuana to that trap house. DUNCAN would bring 10-20 pounds of marijuana to the High Rise at a time, which marijuana was sold by COWAN and BROADY from the High Rise. Due to their involvement in the ongoing "beefs" between PDS, Wahler, and Barry Farms, COWAN and BROADY could not safely sell marijuana at Holiday, because if members of a rival crew saw them "outside" they would be shot at immediately.

FBI agents executed Search Warrant 23-SW-303 at the High Rise on September 14, 2023. During the execution of the search warrant, agents recovered approximately four pounds of marijuana packaged for distribution, digital scales, edible THC products, Promethazine syrup, a Masterpiece Arms "Mac 11" 9mm semi-automatic handgun, a Glock 23 .40 caliber semi-automatic handgun, a Remington 12-guage shotgun, a bulletproof vest, a tactical helmet, and ammunition chambered for 9mm, .40 caliber, 12 gauge, 7.62, x 59mm, .300 caliber, and .357 caliber firearms.



COWAN was the only person inside the apartment when the search warrant was executed. During the execution of the search warrant, the agents found documentary evidence declaring that DUNCAN and the mother of his children lived and paid rent at the High Rise and also found mail matter addressed to DUNCAN from August 2023. In addition to this evidence, DUNCAN's Instagram account – which was searched pursuant to a search warrant – shows that DUNCAN frequently advertised himself as being at the High Rise with marijuana to sell during the relevant time period.

> **Author** larrylove_men_of_business (Instagram: 313450791)
> **Sent** 2019-09-12 23:18:14 UTC
> **Body** I'm up the high rise
>
> . . .
>
> **Author** larrylove_men_of_business (Instagram: 313450791)
> **Sent** 2019-12-17 15:48:38 UTC
> **Body** Meet me at the high rise
>
> **Author** ███████ (Instagram: 24549923)
> **Sent** 2019-12-17 19:40:10 UTC
> **Body** Call me
>
> **Author** ███████ (Instagram: 313511922)
> **Sent** 2020-04-20 19:11:13 UTC
> **Body** Bet u up the high rise
>
> **Author** ███████ (Instagram: 313511922)
> **Sent** 2020-04-20 19:11:19 UTC
> **Body** I'm just tryna get 2
>
> **Author** larrylove_men_of_business (Instagram: 313450791)
> **Sent** 2020-04-20 19:11:44 UTC
> **Body** Yeh



In addition, DUNCAN's Instagram posts include numerous pictures of himself and COWAN (who is DUNCAN's blood cousin) at the High Rise during the relevant time period.



Finally, DUNCAN, who is the last of the co-conspirators to be arrested, has used his Instagram page to advertise his continued alliance with his co-conspirators even after they were arrested/or convicted for their on roles in the charged conspiracies.



13

**ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

1. **The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B) and 3142(f)(1)(E) because DUNCAN is charged in Counts Two, Eleven, Thirteen, and Sixteen with violating 18 U.S.C. §§ 924(o) and 924(c)(1)(A)(i), each of which is a felony firearms offense that carries a maximum sentence of life imprisonment. The United States also seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) because DUNCAN is charged in Count Two with violating 21 U.S.C. § 846, which is a Controlled Substances Act offense which carries a maximum sentence of ten years or more.

Pursuant to 18 U.S.C. § 3142(e)(3)(B), DUNCAN's charges carry a rebuttable presumption in favor of pretrial detention. The rebuttable presumption "'operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" Id. at 124-25 (quoting United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); see also United States v. Portes, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or

endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present evidence to rebut the presumption. United States v. Lee, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

Moreover, even if DUNCAN presents evidence to rebut the presumption, the presumption does not disappear entirely. Id. at 125 (citing United States v. Ali, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.'" Id. (quoting United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

The United States respectfully submits that DUNCAN cannot rebut the presumption in favor of pretrial detention. In addition to the firearms and controlled substances charged in the Indictment, FBI agents seized 38 pounds of marijuana, $72,000, and a machinegun from DUNCAN's bedroom when he was arrested in this case.

**2.  The Bail Reform Act Factors All Favor Detention Given DUNCAN's Risk of Dangerousness to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

### A.   The Nature and Circumstances of the Offenses Weigh in Favor of Detention

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case. This Court does not need a reminder from the United States of the dangers inherent in armed drug trafficking in the District of Columbia. Moreover, DUNCAN is not simply a street-level drug dealer, he is a suppler of drugs and firearms to "youngins" within his gang who he then ordered to "spin the block" against rival gang members to protect PDS' drug dealing business. The evidence seized from DUNCAN's bedroom upon his arrest confirms that DUNCAN is exactly who the United States' trial evidence will show him to be.

### B.   The Weight of the Evidence Against the DUNCAN Favors Pretrial Detention

The evidence of both DUNCAN's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention. The United States has been investigating and prosecuting this case for more than four years and has amassed more than 20 convictions to date. The trial evidence against DUNCAN is overwhelming and will include physical and digital evidence corroborated and explained by multiple cooperating witnesses. In addition, DUNCAN's own words – which he advertised to the world by way of his Instagram account – will further corroborate the United States' evidence at trial.

### C.   DUNCAN's History and Characteristics Weigh in Favor of Detention

DUNCAN's history and characteristics also weigh in favor of detention. Though DUNCAN has not amassed a substantial criminal record, his convictions drug and gun possession are in line with the evidence of his History and Characteristcs as advertised on Instagram. As a "Big Homie," DUNCAN was one step removed from street level dealing and, consequently, less likely to be arrested with drugs or a gun. However, his Instagram posts make clear that he is an active participaint in PDS' drug distribution and related street war, and further that he played the role of "general."

D.  **The Danger to the Community Created by DUNCAN's Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

DUNCAN poses an obvious and articulable threat to the community. Specifically, the threat posed by DUNCAN is that he will continue to engage in the distribution and possession with intent to distribute narcotics while armed with at least one firearm. Even if this Court were to find that DUNCAN is not a risk of committing additional acts of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

DUNCAN is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), and 3142(f)(1)(E). Since he is charged with violating 18 U.S.C. § 924(c), there is a rebuttable presumption in favor of pretrial detention in this case. Even if DUNCAN could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and Defendant poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        United States Attorney

By:    */s/ James B. Nelson*
        JAMES B. NELSON
        D.C. Bar No. 1613700
        Assistant United States Attorney
        Federal Major Crimes Section
        601 D. Street, N.W.
        Washington, D.C. 20530
        (202) 252-6986
        james.nelson@usdoj.gov