**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 23-CR-379 (ABJ) |
| LARRY DUNCAN,<br>also known as "Larry Love,"<br>also known as "Love,"<br><br>Defendant. | |

**DEFENDANT'S MOTION TO EXCLUDE THE GOVERNMENT'S FIREARMS
CLASSIFICATION EXPERT TESTIMONY OF DOUGLAS J. HALEPASKA, JR.
PURSUANT TO FEDERAL RULE OF EVIDENCE 702 AND DAUBERT**

Defendant Larry Duncan, by and through undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to exclude the proposed expert testimony of Douglas J. Halepaska, Jr., a Forensic Examiner in the Federal Bureau of Investigation's Firearms/Toolmarks Unit. The government has noticed Mr. Halepaska to testify that a 9mm Glock 17 Gen4 pistol, serial number PPP143, equipped with an alleged machinegun conversion device ("Item 106"), constitutes a "machinegun" as defined by 26 U.S.C. § 5845(b). For the reasons set forth herein, Mr. Halepaska's proposed testimony fails to satisfy the requirements of Rule 702 and Daubert and should be excluded, or in the alternative, a Daubert hearing should be held before the testimony is admitted.

## INTRODUCTION

Count 20 of the Fourth Superseding Indictment charges Mr. Duncan with using or carrying a machinegun during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(B)(ii). This count carries a mandatory minimum sentence of thirty years, which must run consecutively to any other sentence imposed in this case. The government's evidentiary foundation

for Count 20 rests on the proposed expert testimony of Douglas J. Halepaska, Jr., who purports to have examined and test-fired Item 106 and concluded that it fired fully automatically.

The government's notice, filed as Docket No. 270 on June 2, 2026, is sparse on the methodology, testing protocols, documentation, and scientific basis underlying Mr. Halepaska's conclusions. Without a sufficient showing that his methodology is reliable, relevant, and within the proper scope of expert testimony under Rule 702, admission of his opinions would be error. A mandatory thirty-year consecutive sentence turns on whether Item 106 truly qualifies as a machinegun under the statute, and the Court's gatekeeping obligation is correspondingly weighty.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify in the form of an opinion only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the trial court serves as a gatekeeper, ensuring that expert testimony is both reliable and relevant. The Supreme Court identified several non-exclusive factors bearing on reliability: whether the theory or technique has been tested; whether it has been subjected to peer review and publication; the known or potential error rate; the existence and maintenance of standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within the relevant community. Id. at 593-94.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court extended the gatekeeping function to all expert testimony under Rule 702, not merely scientific testimony. The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. And as the Court cautioned in General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997), "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."

**ARGUMENT**

## I.  THE GOVERNMENT'S EXPERT NOTICE IS INSUFFICIENT TO ESTABLISH RELIABILITY UNDER RULE 702 AND DAUBERT.

The government's notice (Dkt. 270) discloses the conclusions Mr. Halepaska intends to offer but provides virtually no detail about the methodology underlying those conclusions. The notice states that Mr. Halepaska examined Item 106, test-fired it using a magazine from the FBI's Reference Firearms Collection, and observed that, with the selector in either the right or left position, Item 106 fired fully automatically. Dkt. 270 at 3.

Conspicuously absent from the notice is any description of: (1) the specific FBI protocol or standard operating procedure followed during the examination and test-firing; (2) the number of trigger pulls conducted and how each was documented; (3) whether the examination was video-recorded or otherwise contemporaneously memorialized; (4) whether a second examiner independently verified the test results; (5) the condition of Item 106 at the time of testing, including whether the device was in the same condition as when it was seized on September 18, 2025; (6) the error rate associated with the FBI's firearms classification methodology; and (7) whether the

methodology has been subjected to peer review or is otherwise generally accepted in the relevant community.

Without these foundational details, neither the Court nor defense counsel can meaningfully evaluate whether Mr. Halepaska's methodology is reliable. A bare statement of results, untethered to a description of the methodology that produced them, does not satisfy Rule 702. See Joiner, 522 U.S. at 146.

## II.  THE GOVERNMENT MUST ESTABLISH A PROPER FOUNDATION THAT ITEM 106 MEETS THE STATUTORY DEFINITION OF A MACHINEGUN.

The statutory definition of "machinegun" under 26 U.S.C. § 5845(b) requires that the weapon shoot "automatically more than one shot, without manual reloading, by a single function of the trigger." The government cannot rest on a conclusory assertion that Item 106 fired automatically without establishing the precise conditions and documentation of that testing.

Defense counsel is entitled to know and to challenge whether Item 106 fired automatically as a result of the alleged conversion device or due to mechanical malfunction; whether the test-firing was conducted under controlled, reproducible conditions; whether the same results could be replicated by an independent examiner; and whether the specific conversion device—as opposed to the firearm itself—is what caused the automatic fire, a distinction central to the statutory analysis under § 5845(b).

The need for rigorous gatekeeping here is heightened because the machinegun classification is not a mere sentencing factor for the Court to resolve on a lesser standard—it is an element of a separate, aggravated offense that the jury must find beyond a reasonable doubt. In

Castillo v. United States, 530 U.S. 120 (2000), the Supreme Court held that the statutory references to particular firearm types, including "machinegun," in § 924(c) define elements of distinct, aggravated offenses rather than sentencing factors. The Court reaffirmed that holding under the current version of the statute in United States v. O'Brien, 560 U.S. 218 (2010), where a unanimous Court held that "[t]he machinegun provision in § 924(c)(1)(B)(ii) is an element" of the offense, to be proved to the jury beyond a reasonable doubt. And in Alleyne v. United States, 570 U.S. 99 (2013), the Court confirmed that any fact increasing the mandatory minimum sentence is an element that must be submitted to the jury and proven beyond a reasonable doubt.

Because the machinegun status of Item 106 is an element the jury must find beyond a reasonable doubt under O'Brien—and because Mr. Halepaska's opinion is the sole proof the government offers on that element—the reliability of his methodology is not a peripheral concern but goes to the heart of an element of the offense carrying a thirty-year mandatory consecutive sentence. Where the classification rests entirely on expert testing, that testing must be shown to be reliable under Rule 702 and Daubert before the opinion may be placed before the jury.

## III.  THE CHAIN OF CUSTODY FOR ITEM 106 MUST BE ESTABLISHED BEFORE THE TESTING CONCLUSIONS ARE ADMITTED.

The reliability of Mr. Halepaska's conclusions depends on whether Item 106 was in the same condition at the time of testing as it was at the time of Mr. Duncan's September 18, 2025 arrest in Maryland. The government has not disclosed when Item 106 was transferred from Maryland law enforcement to the FBI laboratory; how it was stored prior to examination; whether the conversion device was in the same state at examination as at seizure; or whether any modification, repair, or adjustment was made between seizure and examination.

If the condition of Item 106 changed between seizure and testing—even inadvertently—Mr. Halepaska's conclusions regarding its operability would be unreliable. Defense counsel is entitled to these facts and to a meaningful opportunity to have an independent expert examine and test Item 106, or to challenge whether the testing conditions were adequately documented.

## IV.  A DAUBERT HEARING IS WARRANTED GIVEN THE GRAVITY OF COUNT 20 AND THE CENTRALITY OF THIS TESTIMONY.

Given the consequences of Count 20—a mandatory minimum of thirty years to be served consecutively—the Court's gatekeeping role under Daubert and Kumho Tire warrants a pre-trial hearing at which Mr. Halepaska's qualifications, methodology, and the basis for his opinions can be tested. This is not peripheral testimony on a minor point. Mr. Halepaska's opinion that Item 106 is a machinegun is the foundation of the most severe count Mr. Duncan faces, and the jury cannot meaningfully evaluate it unless the Court first ensures it rests on reliable methodology.

A hearing would permit the Court to evaluate the FBI's testing protocol for firearms classification; the specific steps Mr. Halepaska took in examining and test-firing Item 106; whether his results were independently verified; the error rate of the methodology; and whether the methodology is generally accepted within the firearms examination community.

## CONCLUSION

For the foregoing reasons, Defendant Larry Duncan respectfully requests that this Court: (1) exclude the testimony of Douglas J. Halepaska, Jr. for failure to satisfy the reliability requirements of Federal Rule of Evidence 702 and Daubert; or, in the alternative, (2) order a Daubert hearing before trial at which the government must establish the admissibility of Mr.

Halepaska's testimony; and (3) require the government to produce all bench notes, testing protocols, chain-of-custody records, and documentation related to the examination and test-firing of Item 106.


Respectfully submitted,

/s/ Mark Rollins
Mark Rollins, Esq.
Rollins and Chan Law Firm
419 7th Street NW, Suite 405
Washington, DC 20004
www.rollinsandchan.com
mark@rollinsandchan.com
Office: 202-455-5610
Cell: 202-455-5002
Counsel for Defendant Larry Duncan

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2026, a copy of the foregoing motion was filed via the Court's Electronic Case Filing (ECF) system, which will serve notice upon all counsel of record.

/s/ Mark Rollins
Mark Rollins, Esq.